IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

_____

UNITED STATES OF AMERICA,

       Plaintiff,

   -vs-                     Criminal Docket
                             No. 16-15-H-SEH
JOHN GREGORY ALEXANDER HERRIN,   Court of Appeals
                             No. 20-30130

       Defendant.

_____

TRANSCRIPT OF SENTENCING PROCEEDINGS

Heard in Courtroom Number I
Paul G. Hatfield United States Courthouse
901 Front Street
Helena, Montana
June 15, 2020
11:01 a.m.

BEFORE THE HONORABLE SAM E. HADDON

UNITED STATES DISTRICT JUDGE

TINA C. BRILZ, RPR, FCRR
Freelance Court Reporter
BRILZ COURT REPORTING, INC.
4956 Smallwood Court
Helena, Montana  59601

Proceedings recorded by mechanical stenography, transcript
produced by computer.

<u>A P P E A R A N C E S :</u>

<u>PRESENT ON BEHALF OF THE PLAINTIFF, THE UNITED
STATES OF AMERICA</u>:

        MR. TIMOTHY J. RACICOT
        Assistant U.S. Attorney
        OFFICE OF THE U.S. ATTORNEY
        P.O. Box 8329
        Missoula, Montana  59807

           and

        MR. MICHAEL KAKUK
        Assistant U.S. Attorney
        OFFICE OF THE U.S. ATTORNEY
        Paul G. Hatfield Federal Courthouse
        901 Front Street, Suite 1100
        Helena, Montana  59626


<u>PRESENT ON BEHALF OF THE DEFENDANT, JOHN GREGORY
ALEXANDER HERRIN</u>:

        MR. MICHAEL DONAHOE
        Assistant Federal Defender
        FEDERAL DEFENDERS OF MONTANA
        Great Northern Town Center
        50 West 14th Street, Suite 300
        P.O. Box 250
        Helena, Montana  59601-0250

1  The following proceedings were had:

2

3          THE COURT:  Good morning, everyone.

4      Be seated, please.

5      Madam Clerk, if you will call this matter for us, please.

6          CLERK OF COURT:  Yes, Your Honor.

7      This is the time the court has set aside for sentencing in

8  Criminal Cause 16-15.  This is a Helena Division case before

9  Honorable Sam E. Haddon, the United States of America versus

10 John Gregory Alexander Herrin.

11         THE COURT:  The United States is represented in this

12 matter today by Mr. Tim Racicot of the U.S. Attorney's Office

13 and Mr. Michael Kakuk of that office, as well.  The defendant

14 is represented by Mr. Michael Donahoe.  The defendant is

15 present in person.

16     This is the date and time set for sentencing in this

17 matter, Docket Number 111, issued on April 20 of this year.

18     The background record in the case will reflect that the

19 defendant was indicted on October 26, 2016.  He was taken into

20 custody on October 21, 2018.  Was returned to the United States

21 in November of 2018.  Various pretrial matters were presented

22 to the court, and the case ultimately went to trial on January

23 13 of 2020.

24     Following a jury trial, the defendant was convicted on

25 nine counts set -- as charged in the indictment and was also

1  acquitted on four counts that were charged in the indictment.

2       And as noted, sentencing for today's date and time was set

3  by order of the court, issued back in April.

4       The presentence report in this matter has been prepared

5  and issued on or about April 7.  A revision of that report was

6  dated April 24.  And I take it, counsel, that both sides have

7  received the presentence report and have reviewed it to your

8  satisfaction?

9            MR. RACICOT:  Yes, Your Honor.

10            MR. DONAHOE:  We have.  Thank you.

11            THE COURT:  Well, for purposes of the record, the

12  court notes that it accepts the findings of fact contained in

13  the PSR that are not subject to objection.

14       We have no objections to the PSR filed on behalf of the

15  United States.

16       The defendant has registered a single objection to the

17  PSR, which is recited in the presentence report and as a part

18  of the addendum to the report.  And I'll read that into the

19  record.

20       Give me just a moment to locate it.

21       The addendum to the report contain s the following

22  objection, which reads as follows:  "The defense counsel

23  maintains an objection to the restitution amount which is fixed

24  at $186,870 owed to GardaWorld.

25       The defense objects that although the interstate

1 transportation of stolen money is the specified unlawful

2 activity allowing for the concept of restitution, there is no

3 victim.  GardaWorld is not a victim in the statutory sense

4 unless Mr. Herrin is held accountable for the stealing -- for

5 stealing the money, something for which he was never indicted.

6       The response provided by the United States recites that

7 GardaWorld has requested a total of $250,000 in restitution,

8 and their insurance company, Alliance Marine Insurance Company,

9 has requested restitution in the amount of 140,000, for a total

10 of $390,000.

11       However, the parties have stipulated to a loss amount of

12 $186,870, which is reflected in the guideline calculation.

13       This objection is a matter of law.  The court is in the

14 best position to determine if GardaWorld and the insurance

15 company qualify as victims, and if so, what the corresponding

16 restitution should be.

17       The court is in the best position to rule on this matter.

18       That is the substance of the objection that has been

19 filed.  And as I read the PSR, that is the only objection to

20 the PSR advanced by the defendant.

21       Am I correct in that, Mr. Donahoe?

22             MR. DONAHOE:  Yes, Your Honor.  We had others, but

23 they were resolved.

24             THE COURT:  Yes.  You're correct.  They were resolved

25 and the court has noted that.  And as the court has earlier

1  noted in this hearing, the government has not addressed this
2  issue of restitution through any briefing from the United
3  States Attorney's Office, one way or the other.

4      Is there anything that either side wishes to add by way of
5  argument or comment?

6          MR. RACICOT:  Just briefly, if I could, Your Honor.
7          THE COURT:  Yes, of course.
8          MR. RACICOT:  Thank you, Your Honor.

9  Good morning.

10     Just briefly on this issue, from our perspective, I think
11 it boils down to the definition of a "victim," which is defined
12 in 18 U.S.C. Section 3771 Sub paragraph (e)(2)(A), defines the
13 term "crime victim" to mean a person directly and proximately
14 harmed as a result of a commission of a federal offense.

15     It's our belief Garda is a victim within the meaning of
16 that statute.  They were proximately harmed, if not directly
17 harmed, by the commission of the offense, notwithstanding the
18 fact that Mr. Herrin was not charged with or convicted of
19 actually taking the money from the Garda truck.  Because the
20 only way the jury could have convicted Mr. Herrin is to
21 conclude that that money did, in fact, come from the truck,
22 whether he took it or not.  And as a result, they are the
23 victim that is directly and proximately harmed as a result of
24 the commission of the offenses for which he's convicted.

25     So we believe they are accurately described as a victim by

1  the presentence report by the probation office.  And that the

2  amount of restitution of a hundred and eighty-six thousand

3  eight hundred and seventy dollars should be awarded.

4          THE COURT:  All right.

5          MR. RACICOT:  Thank you, Your Honor.

6          THE COURT:  Mr. Donahoe, do you wish to respond to

7  that?

8          MR. DONAHOE:  I will.

9      Your Honor, I want to talk about first this "victim"

10  definition.  That statute that Mr. Racicot just cited comes out

11  of Rule 2, I think, in the Federal Rules of Criminal Procedure.

12  It incorporates by reference that definition of "victim."  But

13  the restitution statute itself and the cases interpreting that

14  statute have its own definition of "victim."  And I believe

15  that's the one cited in the objection.

16      But, I guess just to make clear, under any definition,

17  neither of these companies, institutions, people, however we

18  want to refer to them, businesses, are victims in the statutory

19  sense.

20      And the reason for that is is because this trial wasn't

21  about who took the money.  That was assumed.

22      And, in fact, it was precisely argued that Mr. Herrin

23  actually was the offender who took the money to the jury in

24  violation of the grand jury clause, and based on all the

25  argument that I'm sure the court is fully acquainted with.

1        So, for those reasons, they are not victims.

2        Thank you.

3              THE COURT:  All right.

4        Anything further from either side on this particular

5   issue?

6              MR. RACICOT:  No, Your Honor.

7        Thank you.

8              THE COURT:  Well, there is material that has been

9   filed with the court that identifies a victim as a person

10  directly and proximately harmed as a result of the commission

11  of an offense for which restitution may be ordered, which is

12  not terribly helpful in addressing the issue directly before

13  the court today.

14       There is another definition that is quoted in the

15  materials and which the court has found to be helpful to the

16  analysis, which recites that it is intended to cover a loss

17  that would not have occurred but/for, number one, the conduct

18  underlying the offense of conviction.  And secondly, that the

19  nexus between the conduct underlying the offense of conviction

20  and the loss being not overly attenuated to the point that a

21  connection cannot be lawfully drawn.

22       And the case law also supports the conclusion that the

23  restitution may be ordered for the offense of conviction, but

24  not for other related offenses that were not charged.

25       My conclusion on this issue, after having given it what we

1    trust is adequate resolution and noting that there is not a

2    Ninth Circuit case that precisely addresses the question, that

3    the offenses of conviction in this case do not include the

4    theft of the money from Garda.  The defendant was convicted for

5    transportation of stolen property, number one; and number two,

6    for several offenses involving money laundering.

7        He was not convicted for the theft of money.

8        And he was not convicted for the possession of stolen

9    property, as such.

10        And it is my determination that taken as a whole, the

11    evidence before the court, given the way the case was charged,

12    tried, and convictions obtained, that the United States has not

13    met its burden of proof in showing that Garda or the insurance

14    company is -- is, by definition, a victim within the statute.

15    And it is the court's determination that the government has not

16    met its burden of proof.  And that restitution cannot be

17    ordered and will not be ordered, simply because of the facts

18    that are really not in dispute before the court.  And the

19    requirement -- or the order for restitution that is requested

20    is denied.

21        I think that, counsel, addresses all the substantive

22    objections to the offenses of conviction.

23        If there's anything further counsel would like to raise on

24    that topic, you're certainly welcome to do so.

25            MR. RACICOT:  Nothing from the government, Your

1  Honor.

2      Thank you.

3          MR. DONAHOE:  I did, if I could, want to talk about

4  in view of the ruling, then, I don't want it to get lost here

5  that -- I understand that legally the loss amount and the

6  restitution amount can be different amounts.

7          THE COURT:  Well, you have a stipulation as to the

8  amount that I'm to deal with, and the parties have agreed to

9  that, a hundred and eighty-six or eighty-seven thousand

10 dollars, or thereabouts.

11         MR. DONAHOE:  And they cover the money laundering

12 counts, I think.

13         THE COURT:  I don't know how that -- I'm not the

14 beneficiary of an explanation that I recall as to how that

15 number was arrived at.  I know it to be a number that's a fixed

16 number.  I think it's a hundred and eighty-six thousand eight

17 hundred and seventy dollars.

18         MR. DONAHOE:  Well, I'm saying there should be no

19 loss amount, and that should affect the guideline range.  So,

20 in light of the court's ruling, the guideline range should go

21 down.  And that's my objection and my point.

22         THE COURT:  Well, your objection on that issue is

23 noted.

24     Do you wish to respond to that, Mr. Racicot?

25         MR. RACICOT:  Thank you, Your Honor.

1       I think the point there is exactly what Mr. Donahoe stated

2   and that's that the loss and restitution can be different.  The

3   loss amount is keyed directly to and relates directly to the

4   counts of conviction.  And regardless of the source of the

5   money, that equates dollar-for-dollar to the amount of money

6   involved in the counts for which the jury convicted Mr. Herrin.

7   So, I don't think there's any question what the loss amount

8   should be, and I think it's just on a different footing than

9   the restitution in this case.

10      Thank you.

11      THE COURT:  All right.

12      Well, I'm of the view that we do have a difference in what

13  the court has determined to be the loss amount, which is a

14  stipulated number, $186,870, and an amount for restitution,

15  which the court, as noted, has determined is not to be ordered,

16  because in the view of the court, the restitution statute does

17  not fit with the charges brought against the defendant or the

18  results of trial and the convictions that were returned.

19      Therefore, it is my determination that we have, from the

20  facts before the court, an offense level of 16 as a base

21  offense level.  And there's a one-point add-on for convictions

22  under 18 United States Code 8 -- 1957, for a total offense

23  level of 17, the defendant's criminal history category is

24  scored at a level I.  And under the advisory guideline range,

25  the offenses of conviction score at a range of 24 to 30 months'

1  time in custody.

2     And that is the ruling of the court on the matters of

3  objection that were before the court.

4     Mr. Donahoe, if you and Mr. Herrin would care to come to

5  the lectern, I'm going to give everyone an opportunity to

6  speak.

7          (Both complying.)

8          THE COURT:  Mr. Herrin, you are going to be invited

9  to address the court directly in this part of the proceeding.

10 Mr. Donahoe is here as your counsel.  I'm going to hear from

11 him first.  And then we'll invite you to make a statement if

12 you wish to do so.

13    Mr. Donahoe.

14         MR. DONAHOE:  Thank you, Your Honor.

15    First, I want to thank the court.  I think gratitude is in

16 order, given the court's patience.  I mean, it's taken quite

17 some time to resolve this.  I know that got kind of bumpy at

18 times.  Apologies for not keeping the court informed of some

19 things that happened up at the Ninth Circuit.  I probably

20 should have been a little quicker on the trigger there.

21    But in any case --

22         THE COURT:  Bumps in the road, Mr. Donahoe, are not

23 uncommon in the experience of this court.

24         MR. DONAHOE:  Right.

25    But I thought that the trial progressed in quite normal

1    fashion.  I appreciated being able to be here and try the case.

2         The last thing I want to say is that both Mr. Herrin and

3    his family were cooperative with me throughout the process.

4    Especially, Mr. Herrin.  He's been a pleasure to represent.

5    I've had discussions with his dad.  He's got a family that

6    loves him and wants to look out for him.  Continue to guide him

7    on his path here in life.  And I just wish that the court would

8    take those things into consideration.

9         Thank you, Your Honor.

10             THE COURT:  All right.

11        Thank you, Mr. Donahoe.

12        Mr. Herrin, do you wish to make a statement, sir?

13             THE DEFENDANT:  I have nothing to add, Your Honor.

14             THE COURT:  You certainly are entitled to speak if

15   you wish.

16             THE DEFENDANT:  I do not wish to do so.

17             THE COURT:  All right.

18        Your statement is noted.

19        Mr. Racicot, I'll hear from the government.

20             MR. RACICOT:  Thank you, Your Honor.

21        Judge, we would recommend a sentence within the guideline

22   range, based on the information contained in our sentencing

23   memorandum, filed as Document 112, and all of the factors in 18

24   U.S.C. Section 3553(a).

25        Thank you.

1           THE COURT:  Thank you, counsel.

2       Well, with those matters having been addressed, the court

3  is prepared to state its disposition of the case.

4       Mr. Herrin, you may well be aware of some of the factors

5  I'm going to mention now, because all of these matters are

6  directly related to the sentencing process and to the manner in

7  which the court makes a determination of what an appropriate

8  sentence in the case should be.

9       You should understand that I have fully considered and

10  evaluated all of the evidence that is of record and available

11  to the court.  That evidence and information has been applied

12  to your individual case.  A totality-of-circumstance approach

13  has been relied upon and utilized.  And part of those

14  considerations include the remarks of counsel that have been

15  made both in the writings filed with the court and the

16  statements -- and the statements made here in court today.

17      I have evaluated and considered and made a determination

18  of the advisory guideline sentence range for the offenses of

19  conviction.  That guideline range is a starting point or

20  sometimes referred to as an initial benchmark for determination

21  of sentence.  It is, however, not binding upon the court.  It

22  is advisory only.

23      And it is to be considered in conjunction with the

24  applicable guideline policy statements and other issues that

25  relate to the sentencing process.

Counsel has mentioned the factors contained in 18 U.S. Code Section 3553(a).  Those factors include the kinds of sentences that are legally available.  That is, what the statutory offenses of conviction provide for penalty upon conviction, the nature and the circumstances of the offenses have been considered.  Your history and characteristics, which are set out in detail in the presentence report, have been reviewed and evaluated and fully considered.  The sentence to be imposed must reflect the seriousness of the offense, that is, the criminal conduct involved, it is to promote respect for the law, provide both appropriate and just punishment for the offenses of conviction, afford an adequate deterrent to criminal conduct, whether by you or by others.  Incapacitate you, to the extent it is necessary and appropriate to protect the public from further criminal activity on your part, and to provide you with any other appropriate care or treatment while you are in custody.  And I, likewise, have an obligation to avoid unwarranted sentencing disparities within the federal criminal justice system.

As mentioned, the guideline range calculation is advisory only.  It is not presumed to be either reasonable or unreasonable.  And it is to be accorded and has been accorded no more or no less weight than other factors.

In addition to those matters outlined, I have considered decisions from both the United States Supreme Court and the

1  Ninth Circuit Court of Appeals that bear directly upon this
2  court's obligations in determining sentence.

3     And with those factors in mind, it is the court's
4  determination that under the terms of the Sentencing Reform Act
5  of 1984, particularly the factors contained in 18 U.S. Code
6  Section 3553(a), and after having given full consideration to
7  the United States Sentencing Guidelines and policy statements,
8  it is the sentence of this court that the defendant, John
9  Gregory Alexander Herrin, is hereby committed to the custody of
10 the Bureau of Prisons for a term of 30 months.  That is a term
11 of 30 months on each of the counts of conviction, all terms of
12 confinement to run concurrently one with the other.

13     Upon release from imprisonment, the defendant shall be
14 placed on supervised release for a total term of three years,
15 that's three years on each count, but all of the terms of
16 supervision to run concurrently one with the other.

17     Within 72 hours of release from the custody of the Bureau
18 of Prisons, the defendant shall report in person to the
19 probation office in the district to which he is released.

20     While on supervised release, the defendant shall not
21 commit any federal, state, or local crime, and shall not
22 possess a controlled substance.

23     The defendant shall be prohibited from owning, using, or
24 being in constructive possession of firearms, ammunition, or
25 other destructive devices while on supervision.

1     This prohibition shall continue after the completion of

2   the term of supervision unless the defendant is granted relief

3   from the condition by the Secretary of the Treasury.

4     The defendant will cooperate in the collection of DNA as

5   directed by United States Probation.

6     Further, the defendant shall comply with all standard

7   conditions of supervision as recommended by the United States

8   Sentencing Commission, and which have been approved by this

9   court.

10     The defendant will also comply with the following special

11   conditions:

12   Number one:  The defendant must provide United States

13   Probation with any requested financial information.  He must

14   not incur new lines of credit without prior approval of the

15   probation office.

16     The defendant must notify the probation officer of any

17   material changes in his economic circumstances that might

18   affect his ability to pay court-ordered financial obligations.

19     Two:  The defendant must apply all monies received from

20   income tax refunds, lottery winnings, judgments, or any other

21   financial gain to outstanding court-ordered financial

22   obligations.

23     The defendant must -- four -- three.  Excuse me.

24     Three:  The defendant must participate in a mental health

25   program inclusive of gambling treatment that is approved by

1   United States Probation.  The defendant must remain in the

2   program until he is released by the probation office in

3   consultation with the treatment provider.  The defendant must

4   pay part or all of the cost of this treatment as directed by

5   United States Probation.

6        Four:  The defendant must not engage in any form of

7   gambling, including, but not limited to:  Lotteries, online

8   wagering, sports betting, and he must not enter any casino or

9   other establishment where gambling is a primary purpose of the

10  operation.  That includes, for example, horse racing tracks,

11  off-track betting, and similar establishments.

12       Five:  The defendant must submit his person, residence,

13  place of employment, or vehicles and papers, to a search, with

14  or without a warrant, by any probation officer based upon

15  reasonable suspicion of contraband or evidence in violation of

16  a condition of release.

17       Failure to submit to search may be grounds for revocation.

18       The defendant must warn any other occupants that the

19  premises may be subject to searches under the terms of this

20  condition.

21       The defendant must allow seizure of suspected contraband

22  for further examination.

23       Six:  The defendant must participate in and successfully

24  complete a program of substance abuse treatment as approved by

25  United States Probation.

The defendant must remain in the program until he is released by the probation office in consultation with the treatment provider.  He must pay part or all of the costs of this treatment as directed by United States Probation.

Seven:  The defendant must abstain from the consumption of alcohol and is prohibited from entering any establishment where alcohol is a primary item of sale.

Eight:  The defendant must participate in substance abuse testing to include not more than 365 urinalysis tests, not more than 365 Breathalyzer tests, and not more than 36 sweat patch applications annually during the period of supervision.

The defendant must pay part or all of the cost of testing as directed by United States Probation.

Nine:  The defendant must not possess, ingest, or inhale any psychoactive substances that are not manufactured for human consumption for the purpose of altering his mental or physical state.

Psychoactive substances include, but are not limited to: Synthetic marijuana, Kratom, and other synthetic stimulants, such as bath salts or Spice.

Ten:  The defendant must not purchase, possess, use, distribute or administer marijuana, including marijuana that is used for recreational or medicinal purposes under state law.

The court, upon review of the record, has determined that the defendant does not have the ability to pay a fine.  No fine

1  is imposed as a part of sentence in this case.

2      It is further ordered that the defendant shall pay to the

3  United States a total special assessment of $900 total, that

4  being $100 for each count of conviction, specifically Count

5  One, Two, Three, Four, Five, Eight, Eleven, Twelve, and

6  Thirteen of the indictment, which shall be due and payable

7  immediately.

8      During any period of incarceration, the defendant shall

9  pay criminal monetary payments at the rate of not less than $25

10 per quarter, with payments to be made through the Bureau of

11 Prisons' Inmate Financial Responsibility Program.

12     Criminal monetary payments shall be made to the Clerk of

13 the United States District Court, Post Office Box 8573,

14 Missoula, Montana 59807.

15     All counts set forth in the indictment and that were tried

16 at the jury trial have been resolved.  There are no counts to

17 be dismissed at this point.

18     Now, Mr. Herrin, you have a right to appeal from this

19 sentence and from your conviction.  Your right of appeal is to

20 be exercised by filing a notice of appeal, which must be

21 accomplished within 14 days of today's date.

22     If you fail to file within that time frame, you could lose

23 your right to appeal by the timelines described by law having

24 not been met.

25     If you elect to file an appeal, you will be entitled to be

1    represented by counsel throughout the appeal process.  And if

2    it should develop that you do not have money to hire and pay

3    for a lawyer, a lawyer will be made available to you to

4    represent you throughout the appeal without cost to you.

5         I strongly recommend, Mr. Herrin, that you speak promptly

6    with Mr. Donahoe.  And if you wish him to file an appeal, that

7    you get that information conveyed to him promptly, so that he

8    will have sufficient time to file the necessary appeal papers

9    to protect your interests before the appellate time allowed by

10   law has expired.

11        Do you understand those appeal rights, sir?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Is there anything further, counsel?

14             MR. RACICOT:  No, Your Honor.

15        Thank you.

16             THE COURT:  Mr. Donahoe, anything further?

17             MR. DONAHOE:  Judge, I wanted to lodge objections to

18   the gambling restrictions and the substance abuse restrictions

19   with the exception of Special Condition Number 9.  I don't

20   think he presents with a background for substance abuse

21   treatment and that sort of thing.

22        Likewise, we object to the gambling restrictions.

23             THE COURT:  The objections are noted.  The conditions

24   will remain as a part of the sentence as stated by the court.

25        Anything further?

1        MR. DONAHOE:  No.

2    Thank you.

3        THE COURT:  All right.

4    We are in recess.

5    Thank you very much, counsel.

6            (The proceedings in this matter were adjourned at

7            11:37 a.m.)

8

9            C E R T I F I C A T E

10

11    **I certify that the foregoing is a correct transcript from**

12    **the record of proceedings in the above-entitled matter.**

13    **/s/ Tina C. Brilz, RPR, FCRR**

14    **Dated this 19th day of July, 2020.**

15

16

17

18

19

20

21

22

23

24

25